[No. 13531. In Bank. — August 4, 1890.]

## D. H. TOLMAN, Respondent, v. EUNICE W. SMITH et al., Defendants, and WILLIAM REED, Intervenor, Appellant.

Place of Trial — Jurisdiction — County of Orange — Los Angeles Courts. — The act creating the county of Orange did not deprive the Los Angeles courts of jurisdiction over cases previously commenced. Such cases could only be removed to the county of Orange on motion properly made.

Mortgage — Foreclosure — Judgment — Deficiency. — A decree which provides for the sale of land on foreclosure, and the application of the proceeds to the sum adjudged to be due from the mortgagor, but which makes no provision for docketing a judgment against the mortgagor for any deficiency that may exist, is not a personal judgment against her.

Findings — Foreign Law — Fact. — A finding that the law of another state "is the same as the law of this state" is a sufficient finding of the fact.

Community Property — Control of Husband. — The husband has the entire control of the community property, and may mortgage it without the consent of the wife, although the deed was taken in her name.

Community Property — Presumption. — Prior to the act of 1889, the presumption was, that property acquired by either spouse by purchase during marriage was community property, and this presumption could only be overcome by clear and satisfactory evidence.

Community Property — Deed — Recital — Evidence — Declaration. — Where the holder of a contract to sell mortgages the land as her own, the mortgagee is not bound by a recital that the property is her separate property, inserted in a deed subsequently made by the owner. Such a recital is at most a declaration of the grantor, and is overcome by his testimony that he knew nothing about the fact.

Mortgage — Foreclosure — Litigation of Adverse Interests. — The rule that adverse interests cannot be litigated in foreclosure applies only to interests not subject to the mortgage. The question whether an interest is subject to the mortgage can be tried in the foreclosure suit.

Mortgage — Priority — Contract of Purchase — Instantaneous Seisin. — Where the owner of land makes a contract to sell it, and before acquiring the title the purchaser mortgages it to a third person as her own property in such a way that such mortgage would be fed by the after-acquired title, and subsequently, when the deed is made to her, and as part of the same transaction, she mortgages the land to secure part of the purchase-money to her grantor, who is without notice of the other encumbrance, the mortgage to the grantor has priority over the other.

Mortgage — Payment — Satisfaction — Subrogation. — Where the amount due on two mortgages is paid by a third person at the request of the mortgagor, and there is no understanding that they shall be considered satisfied, a court of equity will, for purposes of justice, keep the mort-

gages alive, and much more so if the party paying takes an assignment of the mortgages.

MORTGAGE — SATISFACTION — CONDITIONAL PAYMENT. — Where the assignee of two mortgages makes further advances to the mortgagor, who gives a new mortgage covering the amounts of the old mortgages and the further advances, but there is no agreement or understanding that the old mortgages shall be considered satisfied, and possession of them is retained, there is only conditional and not absolute payment.

MORTGAGE — CONDITIONAL PAYMENT — SUSPENSION AND REVIVAL OF REMEDY — PRIORITY. — The effect of conditional payment of one mortgage by another is to suspend the remedy on the old mortgage until the maturity of the new one. Until such maturity the old mortgage cannot be foreclosed. But if the debt be not paid at maturity the old mortgages revive and have priority over an intervening mortgage to a third person.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion.

*Victor Montgomery,* and *A. W. Hutton,* for Appellants.

*Holloway & Kendrick,* for Respondent.

HAYNE, C. — This was a suit to foreclose a mortgage made in Nebraska by the defendants, W. S. Smith and Eunice W. Smith, his wife, upon property in California, to secure a debt payable in Illinois. One Reed filed an intervention for the foreclosure of two prior mortgages upon the property. The trial court gave judgment for the plaintiff, and the defendant Eunice W. Smith and the intervenor appeal.

1. The former appellant makes a number of points, which we shall consider separately: —

*a.* We think it clear that there was no misjoinder of causes of action.

*b.* It was not error to deny the motion for change of venue. The property was in the county of Los Angeles when the action was commenced, and therefore the suit was properly brought in that county. The court did not lose jurisdiction of the cause by the creation of the county of Orange. Assuming, in favor of the appellant,

that the case should have been transferred to the latter county, the party entitled to such change should have made a motion therefor. No motion was made until after the case had been decided, and then no notice was given to the respondent. Under these circumstances the motion was properly denied.

*c.* The parties stipulated that no personal judgment should be rendered against Eunice W. Smith, and it is said that the judgment was in violation of the stipulation. But no personal judgment was taken against her. The decree adjudges that a certain sum is due to the plaintiff, and that the property be sold and the proceeds applied to the payment of such sum and the costs and expenses. There is no provision for docketing a judgment for any deficiency that may remain after the application of the proceeds of sale. This is not a personal judgment against the appellant.

*d.* It is contended that the court erred in omitting to find what was the law of Nebraska and Illinois. Assuming that such a finding was necessary (compare Civ. Code, sec. 755), we think that it was made. After stating that no evidence was introduced as to the law of Nebraska or Illinois, the court "finds that the law of said states is the same as the law of this state." This we think was sufficient.

*e.* The remaining points on behalf of this appellant are based upon the fact that she was a married woman, and that the certificate of her acknowledgment was defective. It is true that the certificate was defective. The complaint prayed that it be corrected, and the judgment was that it be corrected. It is contended, however, that the evidence was insufficient to justify the decision in that regard, and that certain errors and irregularities occurred. But in our opinion it is immaterial whether the certificate was properly corrected or not. The complaint alleges that the property was community property, and if this allegation be true, the hus-

band had entire control and could mortgage the property without the consent of the wife, notwithstanding the fact that the deed was made to her. (*Meyer* v. *Kinzer*, 12 Cal. 252; 73 Am. Dec. 538; *Tryon* v. *Sutton*, 13 Cal. 493; *Kohner* v. *Ashenauer*, 17 Cal. 581; *Landers* v. *Bolton*, 26 Cal. 394; *Althof* v. *Conheim*, 38 Cal. 233; 99 Am. Dec. 363; Civ. Code, sec. 172.) The court found that the property was community property. It is contended, however, that this finding is not justified by the evidence.

The evidence is as follows: At the time of the execution of the plaintiff's mortgage this appellant did not have the legal title to the property. It would seem that she had a contract for a conveyance made in the name of her agent, one Cody. The mortgage, however, contained the following clause: "The said Eunice W. Smith and W. S. Smith hereby covenant with said D. H. Tolman & Co. that they own said premises in fee-simple, and will warrant and defend the same against all claims whatsoever." About a month after the execution of this mortgage the owner of the property (one Darby) made a deed to this appellant, which contained the following recital: "The above-described premises have been purchased by the grantee with her own money, and are owned and held as her separate property." The grantor, however, testified, without objection, that he did not know who furnished the purchase-money. The wife testified that the property was purchased with her separate funds; but she also testified as follows: "The only source of information as to whether any of my property or money was used in the purchase of said property *is what my husband told me.*" The husband was not called as a witness.

Upon this evidence we think that the finding was correct. The act of 1889 in relation to community property did not take effect until after the trial, and hence does not apply. By the prior law the presumption was, that the property was community property, and this presump-

tion could only be overcome by clear and satisfactory evidence. (*Smith* v. *Smith*, 12 Cal. 224; 73 Am. Dec. 533; *Meyer* v. *Kinzer*, 12 Cal. 247; 73 Am. Dec. 538; *Ramsdell* v. *Fuller*, 28 Cal. 38; 87 Am. Dec. 103; *Morgan* v. *Lones*, 78 Cal. 62.) The testimony of the wife is, in effect, merely that her husband told her that her funds were used in the purchase. Of her own knowledge she knew nothing. The only other evidence is the recital in the deed. This deed, it will be remembered, was made *after* the execution of the plaintiff's mortgage. The mortgagee, therefore, ought not to be bound by a recital which the mortgagor chose to have inserted in the deed, especially in view of the covenant in the mortgage that both husband and wife were the owners. Furthermore, such a recital does not conclude a creditor seeking to subject the property to the payment of his debt. (Compare *Swain* v. *Duane*, 48 Cal. 358.) If it has any force at all, it can only operate as a declaration of the grantor. But whatever force it might have as such is destroyed by the testimony of the grantor that he knew nothing about the matter.

Neither of the foregoing pieces of evidence, nor both together, amount to clear and satisfactory proof that the property was the separate property of the wife. The presumption above mentioned must therefore prevail, and the property must be held to have been community property, in view of which all that part of the case relating to the certificate of acknowledgment may be treated as surplusage, and any error that may have intervened in relation thereto is immaterial.

It is said, however, that the question whether the property was community or separate property could not be tried in the action. But the rule that adverse titles cannot be litigated in foreclosure has no application. That rule applies to interests which are not subject to the mortgage. But there is nothing to prevent the most hostile interests from being covered by the same mort-

gage, if the owners so choose. And the question whether any interest is or is not subject to the mortgage, is one which must necessarily be tried in every foreclosure suit in relation to it. It would be strange if the defendants' mere assertion that the interest was not subject to the mortgage could prevent a trial of that question. In this case the question was tried, and it was determined that the wife's interest was subject to the mortgage, and, as above stated, this was perfectly proper.

The foregoing does not conflict with the decision on the former appeal. (74 Cal. 345.) There it appeared, from the record before the court, that the property was the separate property of the wife, and the decision related to the certificate of acknowledgment.

2. The trial court found that the two mortgages set up by the intervenor had been paid and satisfied, and upon that theory rendered judgment against him.

Before examining the correctness of this finding, it may be premised that the mortgages set up by the intervenor were originally prior to that of the plaintiff. One (which was given to the Commercial Bank of Santa Ana) was made nearly a year before that of the plaintiff. The other (which was given to Darby, the grantor of Eunice W. Smith, for part of the purchase-money) was several weeks later than the plaintiff's mortgage. But it will be remembered that neither Eunice W. Smith nor her husband had any title at the time they executed the plaintiff's mortgage. As against them the after-acquired title became subject to the mortgage, but not as against intervening encumbrancers. Now, as above stated, the Darby mortgage was given to secure part of the consideration of the deed from him to Eunice W. Smith, and was part of the same transaction by which Eunice W. Smith and her husband acquired the property. Darby (the owner) had no notice that his grantee had undertaken to mortgage the property before he had conveyed it. (It is found that he had notice, but

this finding is directly contrary to the only evidence on the subject.) And it seems clear that the instantaneous seisin which Eunice W. Smith and her husband may have had by reason of any momentary interval between the deed and the mortgage did not give priority to the mortgage made when they had no title. (Compare *Burns* v. *Thayer*, 101 Mass. 426; *Smith* v. *Stanley*, 37 Me. 13; 58 Am. Dec. 771.)

Bearing in mind, then, the fact that the two mortgages set up by the intervenor had priority over the plaintiff's mortgage, we proceed to inquire whether the finding that they were paid and satisfied is sustained by the evidence.

The only evidence upon the subject is the testimony of Eunice W. Smith, at pages 70 to 74 of the transcript. In our opinion, what her testimony shows is simply this: that at her request the intervenor paid to the holder of said two mortgages the sums due thereon; that they were not canceled, but were assigned to the intervenor, who retained them; and that Eunice W. Smith thereupon gave to him a new mortgage for eight thousand five hundred dollars, which was intended to cover the sums paid by him upon the old mortgages, and four thousand dollars additional, loaned by him to her. In other words, the old mortgages were retired, and a new one (having a longer period to run) substituted in their place; but there was no agreement or understanding that they should be considered satisfied, and they were not canceled, but were retained by the intervenor.

This does not show an extinguishment of the old mortgages. Even if the intervenor had not taken an assignment at the time he paid them off, a court of equity would, for purposes of justice, apply the principle of subrogation. (*Matzen* v. *Shaeffer*, 65 Cal. 81; *Gans* v. *Thieme*, 93 N. Y. 232; *Yabie* v. *Stephens*, 36 Kan. 680; *Bacon* v. *Goodnow*, 59 N. H. 415.) And much more is he entitled to the benefit of those securities, in view of

the fact that they were not canceled, but were assigned to him. If nothing else had occurred, it is clear that he would be entitled to enforce the old mortgages.

What occurred in addition, viz., the substitution of a new mortgage, did not operate to discharge the old ones, but merely suspended the remedy upon them. It is well settled that, in the absence of an agreement to that effect, the payment of one note by another is only conditional and not absolute payment. It extends the time for payment until the maturity of the new note, or, as it is said, "suspends" the remedy upon the old note, but does not extinguish it. (*Brewster* v. *Bours*, 8 Cal. 501; *Griffith* v. *Grogan*, 12 Cal. 317; *Higgins* v. *Wortell*, 18 Cal. 333; *Crary* v. *Bowers*, 20 Cal. 88; *Smith* v. *Owens*, 21 Cal. 23; *Welch* v. *Allington*, 23 Cal. 323; *Brown* v. *Olmsted*, 50 Cal. 165; *Tobey* v. *Barber*, 5 Johns. 68; 4 Am. Dec. 326; and notes, 2 Am. Lead. Cas.)

Now, inasmuch as the remedy upon the debt was suspended, it is clear that the remedy upon the mortgages, which were mere incidents to the debt, was suspended also. And inasmuch as the new note had not matured at the time of the filing of the complaint of intervention, we think that the intervenor was not entitled to have the old mortgages foreclosed in the present case. (See 2 Daniel on Negotiable Instruments, sec. 1272; *In re Mathew*, L. R. 12 Q. B. Div. 506.) But if the intervenor had any rights in the premises, the decree should have saved or provided for them in some appropriate way, and not adjudged that he "be forever barred and foreclosed" of all right in the premises, which, in effect, adjudged that the intervenor could not enforce the old mortgages in any way, even if the new note should not be paid at maturity. This raises the question whether the old mortgages would be revived, with the debts they were given to secure, in case of non-payment of the new note at its maturity, and whether, if so revived, they would have priority over the plaintiff's mortgage.

In relation to the first branch of the question, it seems clear that all the incidents of the debt ought to be revived with the debt. It is to be observed in this regard that no question of the statute of limitations is involved. The statute had not run on either of the old notes when the complaint of intervention was filed, and the statute is not pleaded or relied upon. Nor is it material that the code provides that "a mortgage can be created, renewed, or extended only by writing executed with the formalities required in the case of a grant of real property." (Civ. Code, sec. 2922.) For, in the first place, as long as the statute of limitations has not run, a renewal or extension of the mortgages is not required; they are alive though "suspended." And in the second place, the substituted mortgage was executed with the requisite formalities, and as shown by the cases cited below, it will be treated by a court of equity as an extension of the old mortgages to the extent of the debt secured by them.

And we think that when revived the old mortgages will have priority over the plaintiff's mortgages. They will stand just where they stood before they were suspended. This is clearly the result of equitable principles. For, as we have seen, the change did not extinguish the indebtedness or the security. It was a change of form merely; and equity regards matters of substance, and not matters of mere form. And the plaintiff did not part with anything or alter his position in any way after the change in the form of the indebtedness to the intervenor. He stands now precisely where he stood before such change, and so far as this question of priority is concerned, is a mere volunteer.

This result, which seems clear upon principle, is in accordance with the authorities. The instances in which a court of equity will, to accomplish the ends of justice, keep alive a security, which in form has been extinguished, are frequent and familiar. Thus where

a mortgagor conveys the mortgaged premises to a first mortgagee to satisfy the debt without the expenses of foreclosure, equity will consider the first mortgage as still subsisting as against subsequent encumbrances. (*Brooks* v. *Rice,* 56 Cal. 428; *Smith* v. *Swan,* 69 Iowa, 412; *Silliman* v. *Gammage,* 55 Tex. 366; *Collins* v. *Stocking,* 98 Mo. 296; *Stantons* v. *Thompson,* 49 N. H. 272; *Edgerton* v. *Young,* 43 Ill. 468; *Richardson* v. *Hockenhull,* 85 Ill. 124; *Lowman* v. *Lowman,* 118 Ill. 586.) So if the owner of the equity of redemption acquires the mortgage, a court of equity will, when the purposes of justice require it, treat the mortgage as still subsisting. (*Thompson* v. *Chandler,* 7 Greenl. 381; *Duffy* v. *McGuiness,* 13 R. I. 597.) So where a first mortgagee purchases under a foreclosure sale, equity will keep his mortgage alive for the purposes of protection against a second mortgagee. (*Carpentier* v. *Brenham,* 40 Cal. 234.)

And so where, as in the case before us, one mortgage is substituted for another, equity will keep the first alive when the interests of justice require it. In *Gregory* v. *Thomas,* 20 Wend. 18, this principle was applied even in an action at law. There, in answer to an objection that the first mortgage was merged, Cowen, J., delivering the opinion, said: "The argument is against all the books, ancient and modern. Adjudication of several centuries upon such cases, in every variety of form, in England, in this state, and in neighboring states, settle the proposition that a subsequent security for a debt of equal degree with the former, for the same debt, will not, by operation of law, extinguish it."

And the principle under consideration was in substance laid down and applied in *Swift* v. *Kraemer,* 13 Cal. 530; 73 Am. Dec. 603. There it was held that where two notes and mortgages were retired, and a new note and mortgage given to cover the old one, and an additional advance in cash, the retired mortgages would be kept alive as against an intervening homestead, and

the court, per Baldwin, J., said: "We regard the cancellation of the old mortgages and the substitution of the new as contemporaneous acts. It was not creating a new encumbrance, but simply changing the form of the old. A court of equity, looking to the substance of such a transaction, would not permit a release, intended to be effectual only by force of and for the purpose of giving effect to the last mortgage, to be set up, even if the last mortgage was inoperative." And so in other cases. (See *Pouder* v. *Ritzinger*, 102 Ind. 571; *Packard* v. *Kingman*, 11 Iowa, 219; *Flower* v. *Elwood*, 66 Ill. 438; *Walters* v. *Walters*, 73 Ind. 425.) And even where there has been a formal release and cancellation of a mortgage, a court of equity will set it aside for the purposes mentioned. (*Geib* v. *Reynolds*, 35 Minn. 331; *Hutchinson* v. *Swartsweller*, 31 N. J. Eq. 205; *Young* v. *Shaner*, 73 Iowa, 555. And see also *Barnes* v. *Mott*, 64 N. Y. 401.)

It may be remarked that the transcript does not show whether, at the time the intervenor took his new mortgage, he had notice of the plaintiff's mortgage. But, as above stated, the plaintiff in no manner changed his position after the substitution of a new mortgage for the two old ones, and therefore we do not consider that the question of notice is involved, — at least, in a case like this, where there was no release or cancellation of the old mortgages.

We advise that as against the appellant Eunice W. Smith, the judgment and order appealed from be affirmed, and that as against the intervenor, the order denying a new trial be affirmed, but that the decree be modified in accordance with this opinion, the intervenor to recover his costs of appeal.

Gibson, C., and Vanclief, C., concurred.

The Court.—For the reasons given in the foregoing opinion, the judgment and order appealed from, as

against the appellant Eunice W. Smith, are affirmed, and as against the intervenor, the order denying a new trial is affirmed, the decree modified in accordance with the foregoing opinion, and the intervenor is allowed his costs of appeal.

McFarland, J., dissented.